## AMERICAN CRAYON CO. v. PRANG CO.

District Court, D. Delaware. October 18, 1928.

No. 618.

Carl P. Goepel, of New York City, Charles E. Frohman, of Sandusky, Ohio, and William G. Mahaffy, of Wilmington, Del., for plaintiff.

Clifford E. Dunn and David A. Woodcock (of Duell, Dunn & Anderson), both of New York City, and Charles F. Curley, of Wilmington, Del., for defendant.

MORRIS, District Judge. By bill of complaint and counterclaim the parties charge each other with trade-mark infringement and unfair competition. Each claims the right to use the word "Prang" as the name or mark for certain school and art supplies and that the other has infringed that right. To support and establish its alleged right, each relies upon a distinct contract made by it with the Prang Company, a Maine corporation established in 1856, whose school and art supply business included the sale of many separate articles, probably 70 or 80, under the name or mark "Prang." By the two contracts, if valid, the right to use that mark upon certain articles of the general class was assigned to the plaintiff and the right to use it upon the remainder of the articles sold by the Maine company was transferred to the defendant.

The contract upon which the plaintiff, American Crayon Company, relies was made by the Maine company on March 1, 1918, and purports to transfer to the plaintiff herein all the right, title, and interest of the Maine company in its trade name or mark "Prang," together with certain other names or monograms, as applied to "crayons, pastels, oil and water color paints, pencils, erasers and pens," excepting pens of certain designated styles. The contract upon which the defendant bases both its defense and offense is that of February 6, 1925, made by it with the Maine company, whereby the Maine company purported to transfer all its assets and property of every character (except only the original drawings, plates, and copyrights of some pamphlets then out of print) to the defendant. This contract, the defendant asserts, conferred upon it all the rights in the use of the name "Prang" ever enjoyed by the Maine company except only those, if any, theretofore specifically conferred upon the plaintiff by the contract of March 1, 1918.

The defendant contends, however, that the contract made by the Maine company with the plaintiff is an assignment of a trade-mark in gross and, so, invalid. The plaintiff, on the other hand, urges that the contract made by the Maine company with the defendant conferred upon the defendant no present right to the use of "Prang" or other trade marks or names formerly belonging to the Maine company, in that the Maine company, before making the contract with defendant, had on January 23, 1923, assigned to Laidlaw Bros., Incorporated, for a period of 20 years, all its trade-marks, trade-names, and trade labels. The evidence satisfies me that neither of these contentions is well founded. The assignment to plaintiff was not an assignment in gross. Under all the facts, I think it obvious that the plaintiff acquired that portion of the business and good will of the Maine company represented by the articles specified in its contract with the plaintiff. I am likewise convinced that any rights at any time possessed by Laidlaw Bros., Incorporated, in the trade-marks and trade-names of the Maine company, have been wholly abandoned and surrendered, and that the defendant is now possessed of all rights which the Maine company had immediately after making its contract with plaintiff.

To learn what rights the defendant now has, it is but necessary to subtract from the aggregate rights of the Maine company those transferred by it to the plaintiff through the contract of March 1, 1918. There is no serious question touching the scope or extent of the rights of the Maine company at and immediately before the making of that contract.

The rights conferred upon the plaintiff by that contract were limited to those hereinbefore set out. The rights left in the Maine company included the right to continue its existence under the corporate name "The Prang Company"; the right to the name "Prang" and all good will connected therewith, save with respect to "crayons, pastels, oil and water color paints, pencils, erasers and pens," other than pens of certain styles; the right to sell these enumerated articles as a jobber representing the plaintiff; the right to re-establish its business in the enumerated articles and mark them with its name after the expiration of 20 years, and the right at any time to discontinue acting as plaintiff's representative and to sell instead crayons, pastels, paints, pencils, erasers, and pens obtained from sources other than plaintiff, but not the right to use the name of the Prang Company upon such articles or to employ a general form, color, texture, or design

of package not clearly differentiating in the minds of the buying public such packages from those then being used by the plaintiff in the sale of the enumerated articles under the designation of the name "Prang" or any other mark or name assigned to the plaintiff by the Maine company for use in connection with the specified articles.

On January 19, 1926, the defendant, which after the contract of February 6, 1925, had been acting as a representative of plaintiff in lieu of the Maine company, ceased acting in that capacity, and began to sell other crayons, pencils, and colors as it had the right to do. It was, however, not at liberty in such sales to trespass upon the rights acquired by the plaintiff under the contract of March 1, 1918. This limitation upon its rights the defendant ignored. It placed upon its containers the word "Prismex" theretofore used by it as a trade-mark for colored papers. These papers had been long advertised and designated as "Prang Prismex Papers." Moreover, it adopted a slogan, "When you see *Prismex* think of *The Prang Company*," and gave to Prismex the definition, "Prismex is the new name for the old Prang quality," and so advertised that slogan and that definition as to make "Prismex" a synonym for "Prang."

The use, under these circumstances, of the word "Prismex" on defendant's paint and crayon boxes, was the equivalent of the use thereon of the forbidden word "Prang." Since this one forbidden and unconscionable act operates to deny to defendant any relief under its counterclaim, and since plaintiff is for like unconscionable acts also barred from now obtaining equitable relief, it would serve no purpose to consider whether the defendant has in other particulars trespassed upon plaintiff's rights.

Plaintiff's violations of the principles of fair dealing have been not at all less flagrant than those of the defendant. It has spent over a million dollars in advertising Prang products. It states, with substantial correctness, in its brief, " 'Prang' means, on account of plaintiff's extensive advertising, the American Crayon Company." But since plaintiff is entitled to use "Prang," not upon the whole of the general class of goods, but only in a limited way and on specific articles, it is obvious that to produce the result claimed by plaintiff, its advertising must have been not only extensive but of a character leading the purchasing public to believe that plaintiff's Prang products were not limited to the specific articles purchased from the Maine company, but included as well all allied products or the whole of the general class to which the specific articles purchased belonged. And the evidence discloses that plaintiff's advertising was in fact of that character. It endeavored to expand its business, not only in disregard of the Prang rights reserved by the Maine company, but to the detriment and at the expense of those specific rights. It has regarded its interest in "Prang" not as a bifurcated but as an exclusive right. It knew that "Stixit" or "Prang Stixit" had long been used by the Prang Company of Maine as a mark or name for paste, yet in 1925 the plaintiff changed the name of its paste from "Kroma" to "Stixmore" and advertised this paste side by side with its products carrying the name "Prang." The Maine corporation, and later the defendant, put upon the market a modeling clay marked "Permodello" known as "Prang Permodello." Thereafter the plaintiff bought a clay known as "Mello-Modeling," changed the name and put it upon the market as "Omodelo." On the inclosing carton it printed, "We also manufacture 'Prang' school water colors, 'Prang' wax, pressed and 'Pastello' crayons, 'Old Faithful' blackboard chalks and allied products." "Prismex" has been used by the Prang Company of Maine and by the defendant successively as a trade-mark for colored papers since 1922. In 1924 the plaintiff, which widely advertises and deals in certain "Prang" products, adopted the mark "Permex" for its ink.

A court of equity will not grant its aid to a litigant who does not come with clean hands and free from the taint of a lack of conscionable regard for the rights of him against whom relief is sought. Manhattan Medicine Co. v. Wood, 108 U. S. 218, 2 S. Ct. 436, 27 L. Ed. 706; Edward Thompson Co. v. American Law Book Co., 122 F. 922 (C. C. A. 2), 62 L. R. A. 607.

The bill of complaint and counterclaim must each be dismissed, without costs to either party as against the other.