## AMERICAN CRAYON CO. v. PRANG CO.

### No. 618.

District Court, D. Delaware.

May 14, 1931.

William G. Mahaffy, of Wilmington, Del., and Carl Goepel, of New York City, and Charles E. Frohman, of Sandusky, Ohio, for plaintiff.

Clifford E. Dunn and David A. Woodcock (of Duell, Dunn & Anderson), both of New York City, and Charles F. Curley, of Wilmington, Del., for defendant.

NIELDS, District Judge.

The American Crayon Company filed a bill of complaint against the Prang Company charging infringement of trade-mark and unfair competition. The defendant, by counterclaim, charged the plaintiff with like offenses. This court dismissed the bill of complaint and the counterclaim on the ground that both parties were guilty of improper conduct. The Circuit Court of Appeals found both parties at fault, but reversed the decree of this court, with directions to issue an injunction against each party. Accordingly, the defendant was enjoined "from selling crayons, pastels, and oil and water color paints, without such goods being disassociated in the minds of the public from the name 'Prang'; from selling said goods in cartons and containers deceptively resembling those of plaintiff; from using the Prang monogram 'A.P.P.' (A Prang Product) in the sale of said goods; from using the Prang name, character and mark of the plaintiff in the sale of said goods; from using the word 'Prismex' in the sale of said goods; and from so advertising the word 'Prismex' as to make it a synonym for and an equivalent of the word 'Prang' in the sale of said goods; from using the boxes of the same size, color and indentation as plaintiff's Prang boxes; from selling the said commodities excepting in the cartons, boxes or packages of the real maker thereof, and having the name of the real maker thereon; the general form, color, texture and design of the packages to be such as to clearly differentiate the same in the minds of the buying public from packages used by the plaintiff in the sale of said commodities under the designation of the name 'Prang,' or the 'Prang monogram.'" The facts are fully set out in the prior opinions. (D. C.) 28 F.(2d) 515; (C. C. A.) 38 F.(2d) 448. The plaintiff now seeks to have the defendant and two of its officers, John Laidlaw and Wayne Laidlaw, adjudged in civil contempt for violation of the injunction.

The decree of April 5, 1930, above recited, contains two interdictions broadly restraining defendant from selling crayons, pastels, and oil and water color paints, without such goods being disassociated in the minds of the public from the name "Prang," and further restraining defendant from using the Prang name, character, and mark of the plaintiff in the sale of these goods. The other six interdictions of the decree specifically restrain defendant from repeating particular acts of unfair competition found by the court to have occurred and prescribe certain directions to prevent their repetition. The specific restraints are embraced within the broad interdictions, but in no way limit their breadth, meaning, or application. To a considerable extent defendant observed the specific restraints. It discontinued the use of the trade-mark "Prismex" and the monogram "A.P.P." in connection with the sale of the goods in question. It discontinued advertising any definition or slogan making "Prismex" a synonym of "Prang." It sold the goods in packages which did not deceptively resemble those of the plaintiff, but were substantially different in label, color, and design from plaintiff's packages and could be clearly differentiated in the minds of the buying public from plaintiff's packages were it not for the matters hereinafter considered.

Several months before the entry of the above decree defendant ordered supplies for the coming school year and advertised its stock in school and trade journals. Possibly with some apprehension of the outcome of this case on appeal, defendant donned a fresh costume. The proof shows that it arranged to continue selling crayons, pastels, and oil and water color paints in competition with plaintiff "without such goods being disassociated in the minds of the public from the name 'Prang,'" a trade-name, representing these goods, sold by defendant to plaintiff on March 1, 1918, for twenty years.

In January, 1930, defendant caused the name of a subsidiary corporation, which had been dormant and inactive for some time, to be changed to Bril-tone Products, Inc. The principal officers and directors of that corporation and of the defendant are the same, and their post office addresses are the same. Customers desiring Bril-tone crayons, water colors, etc., were advised by such advertisements to order the goods from Bril-tone Products, Inc. Defendant continued this line of competition with plaintiff after the entry of the decree. It adopted Bril-tone as the trade-name for such goods. It substituted Bril-tone for Prismex and made Bril-tone a synonym of Prang by artful advertising.

In March, 1930, the defendant caused to be inserted in School Arts, a trade magazine, in which the Prang Company had theretofore advertised in such a manner as to make "Prismex" synonymous with "Prang," an advertisement identifying the name "Bril-tone" with the name "The Prang Company," stating "A New Name for a Color Line that Has Won Widespread Approval" and "The Prang Company, Distributor of 'Bril-tone' Quality Products." Again, in School Arts, April, 1930, the defendant's advertisement features the trade-name "Bril-tone," as "A Trade-Name for a Color Line," and "Bril-tone is the trade-name of the brilliant high quality school colors supplied exclusively by Bril-tone Products, Incorporated, to The Prang Company as sole distributor of these products." These early advertisements show an intention on the part of the defendant to tie up or connect the old products sold under the trade-name "Prismex" with the same products now to be sold under the trade-name "Bril-tone," and to fix in the minds of the buying public the thought that "Bril-tone" was the new name for the same products theretofore sold by the Prang Company under the name "Prang," or "Prismex," the sale of which under the name "Prang" or "Prismex" had been restrained. A continuation of such advertising could not help but lead to confusion in the minds of the buyers of these articles.

Further, the defendant has issued and distributed many thousand copies of a catalogue (Plaintiff's Exhibit No. 1) bearing on the front and back covers "School Buyers Guide—1930" with the name "Prang" in bold letters. The thought underlying the above-mentioned advertising of making "Bril-tone" a synonym for "Prang" is illustrated by an examination of this catalogue. On page 2, appear the words "'Bril-tone' is the trade name of water colors, crayons, and certain other products distributed by The Prang Company. * * * Order water colors from The Prang Company." At the top of practically every even-numbered page of this catalogue appear the words "The Prang Company," and at the bottom of each page the words "Distributors of Bril-tone Quality Products—Water Colors—Crayons—Poster Colors—Oil Colors—Easel Paints." On many other pages the word "Prang" is prominently displayed, for example, "Prang Enginex Papers," "Prang School Water-Color Brushes," "Prang Oil Dyes," "Prang Art Packet," "Prang Quality Erasers," and many similar instances. This intermingling in the same catalogue of the trade-name "Prang" in connection with the advertising of water colors and crayons can only result in creating in the minds of the public that confusion which the decree was designed to prevent. It is true that since the decree the defendant has placed on packages designed and made up by the Bril-tone Products Co., Inc., and containing the articles in question, the name of the real maker of the product contained therein, and also placed the name of such maker upon the advertising of such products. But in addition to the name of the maker the defendant has also placed on these packages, and used in connection with such advertising, the name "Bril-tone" and Bril-tone Products, Inc. By the decree the defendant was prohibited from selling the articles in question except in packages of the real maker thereof and having the name of the real maker thereon. By "packages of the real maker," the decree meant the standard well-recognized packages identified in the trade as a part of the good will of the maker of the goods, and not a special line or private brand prescribed by a subsidiary corporation under the control and direction of the Prang Company or its officers.

It seems to me that the defendant has failed to give effect to the finding of the appellate court when this case was reviewed by it. That court stated: "Turning first to the contract rights of the plaintiff which have been violated by the defendant, we are of opinion that so far as the specified articles, viz., 'all kinds of crayons, pastels, oil and water color paints, pencils, pens and erasers' are concerned, the Prang-Maine gave up everything of a Prang name, character or mark to the American. This they have not done." Had the defendant company intended to continue in fair and honest competition with the plaintiff, and given full force and respect to the decision of the appellate court, it would have discontinued entirely the use of the word "Prang" in connection or association with all advertising of the articles in question, whether by stationery, trade journal, or catalogue. As the corporate name of the defendant includes the word "Prang," it necessarily follows that the defendant cannot use its corporate name in advertising, in catalogue or otherwise, in association with the sale of these products.

I am not impressed with the contention of the plaintiff that the defendant has violated the injunction in the sale and advertisement of "Prang Temperine." It is doubtful from the evidence whether this product is or has been considered by either party as a water color. So far as I find, its sale was not complained of by the plaintiff in the main cause, referred to in the pleadings or testimony,

mentioned in either of the prior opinions, nor discussed in the briefs. This contention, it seems to me, is but an afterthought on the part of the plaintiff.

On the whole, I am satisfied that the defendant has violated the decree and injunction issued in pursuance thereof by the use of the word "Bril-tone" in connection with the advertising and sale of the articles in question and in issuing and distributing its catalogue, Plaintiff's Exhibit No. 1; and that in all other respects it has complied with the spirit and intent, if not the letter, of the decree.

To ascertain the extent of the loss, expense, or injury the plaintiff has sustained by defendant's disobedience of the injunction, testimony will be heard in open court.