## PRANG CO. v. AMERICAN CRAYON CO.

Nos. 4760, 4761.

Circuit Court of Appeals, Third Circuit.

April 29, 1932.

George N. Davis, of Wilmington, Del. (Clifford E. Dunn, of New York City, of counsel), for appellant.

C. P. Goepel, of New York City, Charles E. Frohman, of Sandusky, Ohio, and Wm. G. Mahaffy, of Wilmington, Del., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and FAKE, District Judge.

WOOLLEY, Circuit Judge.

These separate appeals are the sixth and seventh stages of a protracted litigation. For the underlying facts and applicable law, we refer to the several opinions reported in American Crayon Co. v. Prang Co. (D. C.) 28 F.(2d) 515 (C. C. A.) 38 F.(2d) 448 (D. C.) 50 F.(2d) 225, and (D. C.) 51 F.(2d) 737, and shall state only enough of the facts to bring into view the present phase of the controversy.

This case grew out of a contract between the American Crayon Company and The Prang Company of Maine, whereby, first, The Prang Company sold the American Company for a substantial money consideration its exclusive right, title and interest in its trade name "Prang" and trade monogram A. P. P. (a Prang product) as theretofore applied to "crayons, pastels, oil and water color paints, pencils, erasers and pens," and to nothing else; and, whereby, second, The Prang Company reserved to itself the right to act as agent of other concerns manufacturing these commodities and to sell them, not under the trade name "Prang" or under the trade monogram, but only in a manner to differentiate the competing products in the mind of the buying public.

Each party construed the covenant in its favor rigidly and the covenant in favor of the other party loosely. Both parties stretched the covenants. After pursuing improper lines of conduct in the sale of various commodities, each party in the original suit sought relief against the other. Relief was at first denied both, yet was later accorded by a decree of the District Court entered on the mandate of this court restraining The Prang Company from selling these particular products without their "being disassociated in the mind of the public from the name 'Prang,'" "from selling (them) in cartons and containers deceptively resembling those of the" American Company, "from using the Prang name and monogram," and generally "from selling the said commodities except in cartons, boxes or packages of the real maker thereof and having the name of the real maker thereon," with the requirement that the cartons, boxes or packages shall, in form, color and design, "be such as to clearly differentiate (them) in the mind of the buying public from packages used by the (American Company) in the sale of the said commodities" under the purchased trade name and monogram. On the other hand the decree restrained the American Company from selling or representing that it has an exclusive right to sell under the Prang name or monogram any commodities except those designated in the contract.

The Prang Company, Appellant, v. American Crayon Company, Appellee, No. 4761.

The American Crayon Company observed the decree fairly well, but The Prang Company (now a Delaware corporation), disliking the restraint against it, thought of a way out.

The essence of this court's interpretation of the contract was to the effect that The Prang Company "gave up everything of the Prang name, character or mark" as to the six articles covered by the contract and that, while The Prang Company was "allowed, under certain circumstances mentioned in the contract, to sell such articles when made by other makers, they could only do so when such goods were disassociated in the mind of the public from the name Prang." The Prang Company, having its own notion of the meaning of the words "other maker" and "disassociated," set about to create or adopt another company and thereby to create an "other maker," giving it the name "Bril-tone Products, Inc.," and causing it to act as a kind of jobber. It then by its advertisements described itself as distributor of the Bril-tone products and advised its customers to purchase the goods from its own created "other maker" and endeavored ostensibly to disassociate the goods from the name "Prang" by giving them a new name, "Bril-tone." Yet it advertised them under the new name in its regular Prang advertisements, sometimes omitting the name of the real manufacturer and sometimes including it yet always making it subordinate to the more prominently displayed words "Bril-tone" and "Prang."

It is not practicable to reproduce these advertisements. It will be enough to say that The Prang Company in advertising the named products associated and interwove the word "Bril-tone" with the word "Prang" in nearly every page of its advertisements and so iterated and reiterated the word "Bril-tone" in that association that a customer who knew the Prang products would, if he read the word often enough, come to know them by the name "Bril-tone" products and in this way would be led to believe that they were actually Prang products and therefore had the trade value which The Prang Company had sold to the American Company.

On entering a decree adjudging The Prang Company and two of its officers in contempt for violating its previous decree—the matter here on appeal—the District Court held that this practice did not escape the injunction. In this we agree. Though different in name and in a way different in origin, the commodities were still those of The Prang Company, and, as advertised, they were not disassociated in the mind of the public from those of the American Company. The products so named and sold were really the products of The Prang Company dressed in a new costume—of gauze.

Even so, The Prang Company complains that the learned trial judge made an interpretation of the decree which is wrong. Quoting the offending paragraphs, the first is as follows:

"By 'packages of the real maker,' the decree meant the standard well recognized packages identified in the trade as a part of the good will of the maker of the goods and not a special line or private brand prescribed by a subsidiary corporation under the control and direction of The Prang Company or its officers."

That is a correct interpretation of the decree and of the decision of this court under which it was entered. We think the expression apposite to the facts in this case.

The court then said:

"Had the (Prang Company) intended to

continue in a fair and honest competition with the (American Company), and given full force and respect to the decision of the appellate court, it would have discontinued entirely the use of the word 'Prang' in connection or association with all advertising of the articles in question, whether by stationery, trade journal or catalog."

That also is correct.

Continuing, the court gave expression to the thought, of which The Prang Company particularly complains, as follows:

"As the corporate name of the (Prang Company) includes the word 'Prang', it necessarily follows that the defendant cannot use its corporate name in advertising, in catalog, or otherwise, in association with the sale of these products."

We understand this expression to be the court's interpretation of the decree as applied to the facts then in dispute. That The Prang Company, as agent or distributor, cannot use the word "Prang" in advertising the goods of "other makers" *in association* with their sale is but a statement, differently phrased, of this court's interpretation of the contract—that The Prang Company can sell the goods only when made by "other makers" and when they are *"disassociated* in the mind of the public from the name Prang." What future conduct of The Prang Company will under different facts conform to or violate this requirement of the decree, we assume the learned trial judge did not decide; certainly we cannot forecast.

The court by its decree in these contempt proceedings ordered that the American Crayon Company recover from The Prang Company and its two named officers "the sum of $4,932.24, as and for the loss, expenses and injury the (American Company) has sustained by the (Prang Company's) disobedience of said decree and injunction."

█ The Prang Company charges error in the award of this amount "or any other amount" on the contention that its violation of the injunction, done under advice of counsel, was not deliberate, willful or malicious. Whether malicious or willful, it certainly was deliberate and it was committed with the obvious intent to regain the trade value of the word "Prang" which its predecessor had sold and for which it had been paid.

The order adjudging the defendants in contempt is affirmed.

### The Prang Company, Appellant, v. American Crayon Company, Appellee, No. 4760.

The decree which is the basis of the proceedings in these two appeals was entered April 5, 1930. The contempt proceedings, previously considered, followed promptly. After the opinion but before the decree holding The Prang Company in contempt, that company moved for an order adjudging the American Company in contempt. The court denied the motion. From that order no appeal was taken. On July 1, 1931, more than a year after the entry of the main decree, The Prang Company moved for a supplemental decree, representing that the American Company was violating the injunction against it by advertising certain articles with respect to which it was forbidden to use the name "Prang" in association with the sale of those articles in which it could lawfully use the name and in this way was unlawfully indicating Prang origin of non-Prang articles and appropriating the Prang good will. The Prang Company in its motion for a supplemental decree contends that the main decree should be altered, amended, or changed by supplemental provisions in order to bring these alleged acts within its proper terms and within the spirit of the mandate of this court. The trial court entered an order denying the motion and from that order alone The Prang Company has taken this appeal.

█ This order is right on any one of several grounds according to the theory on which the motion was made. If made to correct errors in the decree, not merely clerical, another remedy was available; if made to reconstruct the decree and thereby procure a new decree, the court was without jurisdiction in view of the passing of the term, Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797; Realty Acceptance Corporation v. Montgomery, 284 U. S. 547, 52 S. Ct. 215, 76 L. Ed. ——; if made to expand the decree so as to make it cover new post-decree practices, the procedure is not recognized in this circuit, Minerals Separation, Ltd., v. Miami Copper Co. (C. C. A.) 269 F. 265.

The order denying the motion for a supplemental decree is affirmed.