### CHAMPION SPARK PLUG CO. v. SANDERS et al.

Civ. No. 3767.

United States District Court
E. D. New York.

Jan. 30, 1952.

Ward, Crosby & Neal, New York City (Wilber Owen and Carl F. Schaffer, Toledo, Ohio, of counsel), for plaintiff.

Bernard Bienstock, New York City, for defendants.

BYERS, District Judge.

This is a motion by plaintiff to punish the defendants for contempt of court for selling used spark plugs of plaintiff's manufacture contrary to certain terms of the decree on mandate of February 9, 1950, in that (a) the shells of such plugs are not painted as so authorized as to color; and (b) that such plugs do not have the word "Repaired" or "Used" stamped thereon "by any means or method such as to produce a legible marking"; and (c) that the plugs do not "legibly set forth the fact that the repairs thereto were performed by or for the defendants".

For convenience the applicable provisions of the said decree are quoted:

"4. That defendants, Peter Sanders, Samuel Sanders and Harry Sanders, their agents, attorneys, salesmen, employees, servants, privies and confederates, and each of them, be and they are hereby perpetually enjoined—

"(a) from selling or offering for sale, or delivering to others for sale, any used spark plugs of plaintiff's original manufacture which have been repaired, reconditioned or otherwise treated to improve its appearance or usefulness, unless and until—

"(1) the metal shell of one-piece plugs and the metal shell and bushing nut of two-piece plugs have been completely covered with permanent aluminum paint or with durable gray or brown or orange or green paint or lacquer, such as Duco.

"(2) the word 'REPAIRED' or 'USED', all in capital letters of a size as large as the face of said plugs will permit, has been stamped and baked upon the hex portion of said plugs of all sizes by an electrical hot press, or by some other means or method to produce a durable marking, in a contrasting color in a manner clearly and distinctly visible on the background on the face of the metal shell of said plugs, which metal shell and the attached bushing nut shall have been completely covered by permanent aluminum paint, or other paint or lacquer as set forth in the preceding paragraph (4-a-1) hereof, to provide such background;

"(3) there is plainly and permanently set forth on the plugs themselves the fact that the repairs and reconditioning thereof were performed wholly by the defendants."

The case on the merits is reported in 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386, affirming 2 Cir., 156 F.2d 488, 493, so that all relevant facts are sufficiently recorded to render repetition thereof entirely superfluous.

This motion went to hearing on December 27 and 28, 1951, in connection with which the testimony of four witnesses was taken, and many exhibits were received; the important part of the latter were spark plugs sold by the defendant to purchasers here and abroad, being those originally manufactured by plaintiff, and repaired by defendants and marketed by them in purported compliance with the said decree.

These plugs are painted as to the metal parts so that they look black, and for all practical purposes are black, not green as permitted by the decree, or any other color therein stated.

Thus the first specification of failure on the part of defendants to abide by the decree is clearly established. Further, the use of a dark green lacquer, which was darkened by the addition of lamp black, is consistent only with a purpose to make the metal parts appear to be black. The purpose succeeded, thereby simulating the appearance of new plugs.

As to the second and third, concerning the alleged failure of the defendants to have the word "REPAIRED" or "USED" baked upon the "hex portion * * * to produce a durable marking, in a contrasting color in a manner clearly and distinctly visible * * *", the demonstration of non-compliance, so far as the 65 or so

plugs in evidence, is convincing. Most of them contain lettering, some of which is discernible, but much of which is not, in which the letters constituting the word "REPAIRED", or some of them, in contrasting color, can be made out by scrutiny; but they are frequently merged with or overrun the initials P.R.S.P.Co., constituting a lower or second row of the one panel.

The hexagonal surface upon which this two-line combination appears, is half an inch long, and a quarter inch wide at its greatest extent, tapering at the ends to $\frac{3}{16}$ of an inch, whereby the attempt to crowd into so small a space an eight letter word over five initials so as to present a legible disclosure is necessarily difficult in the extreme. It would be deemed impossible except for four of the plugs contained in a set of ten, constituting defendants' Exhibit D. As to them, the word and the initials can be read, but as to the other six that is not true, in varying degrees of deficiency.

The plaintiff's Exhibits 1 and 5 are plugs purchased on or about July 6, 1951, by mail order from the defendants, in a box of 50, all enclosed in individual containers, and these two contain no stamping whatever; as to them, the violation of the decree is flagrant.

There is nothing in the quoted portions of the decree to require that the wording intended to identify the plugs as having been repaired by the defendants are to be stated in one panel of the hex. There is no apparent reason why the word "REPAIRED" should not be stamped in one, and the true name, or the business name of the defendants in another. Since that is too long to be so shown in full, the abbreviation adopted is probably all that can be required, provided it legibly appears in contrasting color, like that used for the word "REPAIRED". The actual showing of the one panel arrangement would be consistent with a purpose to render nugatory these two provisions of the decree, and as to them it is held that the plaintiff has proved its present cause.

The failure of the defendants to expose their full address (1137 Bedford Avenue, Brooklyn) on the cartons and containers upon which the legend "Brooklyn 16, N. Y." is shown is less than a candid disclosure of their place of business. A postal zone is not known to be a presently permanent thing for the purpose of this cause. That, however, is not relied upon by plaintiff.

For the defendants, it is argued: that no case of civil contempt has been demonstrated, and that only a prosecution for criminal contempt would lie.

The plaintiff, in answer to this contention, relies upon Leman v. Krentler-Arnold. Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389, and with complete success in the opinion of this Court.

While the factual background is not the same, the language of the opinion in John B. Stetson Co. v. Stephen L. Stetson. Co., 2 Cir., 128 F.2d 981, at page 983, is believed to apply: "In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded. (Citing authorities)"

The spirit of this injunction was to require of these defendants such a labeling of the used product of the plaintiff, as would be calculated to apprise a purchaser that the permitted retention on the plugs of the plaintiff's trade-mark CHAMPION and style numbers, must be clearly associated with a legible notice that the device is no longer new and in the condition in which it was marketed by plaintiff; nor of its original durability, and that it is the defendants, not the plaintiff, who sponsor the used and repaired article originally manufactured by the plaintiff.

Since it is shown by this testimony that some of the accused plugs were marketed abroad and thus tended to affect the plaintiff's foreign distribution, the requirements of the decree gain an added significance.

The plaintiff is entitled to an order containing a finding of contempt of the decree on mandate, and providing for the appointment of a Master to take testimony and report his findings as to damages and profits, (John B. Stetson Co. v. Stephen L. Stetson Co., 2 Cir., 133 F.2d 129), including legal

expenses of this proceeding. Aladdin Mfg. Co. v. Mantle Lamp Co. of America, 7 Cir., 116 F.2d 708, at page 717.

Settle order.